WO         IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

THERESA BROOKE, a married woman
dealing with her sole and separate claim,

                            Plaintiff,

    vs.

STONETAR LODGING I, LLC, a Delaware
limited liability company, d/b/a/ Courtyard
Marriott Cherry Creek,

                          Defendant.

No. 2:17-cv-2113-HRH

O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

Plaintiff is Theresa Brooke. Defendant is Stonetar Lodging I LLC, which owns and/or operates the Courtyard Marriott Cherry Creek hotel in Denver, Colorado.

Plaintiff alleges that on July 1, 2017, she went to defendant's website, http://www.courtyardcherrycreek.com, "for purposes of booking a room later this year."[3]

---

[1]Docket No. 9.

[2]Docket No. 12.

[3]Verified Complaint at 2, ¶ 2; 4; ¶ 14, Docket No. 1.

-1-

Plaintiff, who is confined to a wheel chair, "requires the use of an ADA accessible room" and she attempted to reserve such a room for an upcoming trip to Denver on defendant's website.[4] Plaintiff alleges that she "entered her desired dates in July, but the website only offered non-accessible rooms...."[5] Plaintiff alleges that she then attempted to book dates two months out and four months out, but the website did not offer any ADA accessible rooms for these dates either.[6]

On July 2, 2017, plaintiff commenced this action in which she asserts a claim under Title III of the ADA, which prohibits discrimination by public accommodations. Plaintiff alleges that defendant has violated Title III of the ADA because "it has failed to make its website reservation system fully and equally accessible to [p]laintiff and [other] disabled persons."[7] More specifically, plaintiff alleges that defendant "does not allow for the reservation of ADA accessible rooms in the same manner and during the same hours as a patron can reserve non-accessible rooms."[8]

Defendant now moves to dismiss plaintiff's complaint pursuant to Rules 12(b)(2) and 12(b)(6), Federal Rules of Civil Procedure.

---

[4]Id. at 1, ¶ 1; 4, ¶ 14.

[5]Id.

[6]Id.

[7]Id. at 5, ¶ 23.

[8]Id. at ¶ 24.

Discussion

"[A] court considering a motion relating to jurisdiction as well as a motion on the merits generally ... decide[s] the jurisdictional issue first[.]" Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp., 594 F.2d 730, 733–34 (9th Cir. 1979). Thus, the court considers defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction first.

"Where [a] defendant[] move[s] to dismiss a complaint for lack of personal jurisdiction, [the] plaintiff[] bear[s] the burden of demonstrating that jurisdiction is appropriate." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "In determining whether [a plaintiff has] met this prima facie burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor....'" Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff and all doubts are resolved in [her] favor.'" Id. (quoting Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Dole Food Co., 303 F.3d at 1110. "Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution." Ariz. School Risk Retention Trust, Inc. v. NMTC, Inc., 169 F. Supp. 3d 931, 935 (D. Ariz. 2016). "The Constitution permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

"[T]here are two forms that personal jurisdiction may take: general and specific." Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). Plaintiff does not contend that defendant is subject to general jurisdiction in Arizona. Plaintiff only contends that defendant is subject to specific jurisdiction in Arizona.

The court

> employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. (citation omitted).

>[T]he "purposeful availment" requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents. "It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts are purposefully directed toward forum residents."

Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 417 (9th Cir. 1997 (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).

The purposeful availment prong is analyzed using the three-part Calder "effects test". "The three-part test requires that the defendant have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 805 (9th Cir. 2004) (quoting Dole Food Co., 303 F.3d at 1111). Resolution of the second prong of the Calder "effects test" controls the outcome of defendant's Rule 12(b)(2) motion. The question here is whether defendant has expressly aimed its website at Arizona residents.

Generally, "passive sites 'where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions' ... do not support jurisdiction." Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1226–27 (9th Cir. 2011) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D.

Pa. 1997)). However, "interactive websites may create sufficient contacts, depending on how interactive the website is." Jeske v. Fenmore, Case No. SACV 08–01015 DOC (MLGx), 2008 WL 5101808, at *4 (C.D. Cal. Dec. 1, 2008). An "interactive website through which 'the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet' justifies a court's exercise of [specific] personal jurisdiction.'" Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1103 (C.D. Cal. 2007) (quoting Zippo Mfg. 952 F. Supp. at 1224). In other words, "[p]ersonal jurisdiction is appropriate 'when an entity is conducting business over the internet.'" Amer. Auto. Ass'n, Inc. v. Darba Enterprises Inc., Case No. C 09–00510 SI, 2009 WL 1066506, at *4 (N.D. Cal. April 21, 2009) (quoting Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999)). However, "interactive websites that allow a user to exchange information with a host computer" may not be sufficient. Jeske, 2008 WL 5101808, at *4. Courts are to "look 'to the level of interactivity and commercial nature of the exchange of information that occurs on the Web site to determine if sufficient contacts exist to warrant the exercise of jurisdiction.'" DFSB Kollective Co. v. Bourne, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012) (quoting Cybersell, 130 F.3d at 418).

Matt Friend, the Vice-President of Risk Management for defendant, avers that defendant's website "contains general information for the Hotel, including, but not limited to: contact information, location information, descriptions of guest room amenities, and

descriptions of the hotel amenities."[9] Friend avers that "[h]otel room reservations are not processed through" defendant's website but rather that defendant's website contains a link to a Marriott online room reservation system,[10] which is where a guest may make an online room reservation. Friend avers that defendant does not operate or maintain the Marriott website.[11] Because room reservations cannot be made on its website, defendant argues that no business is conducted on its website and no contracts are formed.

Plaintiff does not dispute that a potential guest visiting the home page of defendant's website may enter her desired dates for lodging, the number of rooms, and the number of guests and then click on a "Book online now" button, which will take the guest to the Marriott website and that it is on the Marriott website where the guest can choose a room and enter her information, including credit card information, to book a room. While plaintiff acknowledges that defendant does not own or maintain the Marriott website, plaintiff argues that defendant certainly supplies information to Marriott as to which rooms are available on which days for which rates. Without this cooperation from defendant, plaintiff argues that Marriott would not be able to maintain the reservation website. While the degree of cooperation might not be known without jurisdictional discovery, plaintiff argues that there has to be some cooperation and plaintiff argues that this cooperation is sufficient to show,

---

[9]Declaration of Matt Friend at 2, ¶ 7, Exhibit A, Defendant's Motion to Dismiss [etc.], Docket No. 9.

[10]Id. at ¶¶ 8, 11.

[11]Id. at ¶ 9.

that contrary to defendant's contention, defendant is in fact conducting business via its website. Plaintiff points out that the "Book online now" link appears on defendant's website at least nine times and argues that this shows that defendant is soliciting business, not simply sharing information. After all, as plaintiff points out, if a guest makes a room reservation after accessing defendant's website by clicking on the "Book it now" button, the money for that reservation, or at least some of it, goes to defendant, not to Marriott.

Plaintiff also points out that defendant's website has a "contact us" page which has a form that can be filled out to message defendant directly. Plaintiff suggests that a potential guest could inquire about making a reservation using the "contact us" form. Plaintiff argues that this is further evidence that defendant is soliciting business via its website, and not simply sharing information.

Plaintiff also contends that defendant has engaged in other conduct on its website that is expressly aimed at Arizona. Plaintiff argues that defendant directly targets Arizona residents by posting reviews from Arizona residents on its website and by having links on its website telling the reader about Colorado and things to do there.[12] Plaintiff argues that this information shows that defendant is actively attempting to entice Arizona residents to come stay at its hotel. Plaintiff points out that the reviews from Arizona residents are posted

---

[12]Exhibit 1, Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Docket No. 12.

right next to the "Book online now" link, which plaintiff argues indicates that defendant is directly targeting Arizona residents.

Defendant's website is not entirely passive because a potential guest may enter some of the information needed to make a reservation while on defendant's website but then the guest is directed to Marriott's website. The business that is being conducted in terms of room reservations is consummated on Marriott's website, not defendant's. Plaintiff cannot rely on Marriott's contacts with Arizona to establish that jurisdiction over defendant in Arizona is warranted. See, e.g., Sher, 911 F.2d at 1365) ("jurisdiction depends only upon each defendant's relationship with the forum"). Plaintiff's argument that defendant must be cooperating with Marriott in order for Marriott to maintain the room reservation website is unavailing. While defendant almost surely provides some information to whoever maintains the Marriott website, that does not mean that defendant is conducting business over the internet.[13] All it means is that defendant is providing information to Marriott so that Marriott

---

[13]Plaintiff has requested an opportunity to take limited jurisdictional discovery on the extent of defendant's cooperation and the total number of Arizona residents who have stayed at defendant's hotel. Jurisdictional "[d]iscovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 n. 1. (9th Cir. 1977). The jurisdictional discovery that plaintiff seeks here would not change the fact that a guest cannot make a room reservation on defendant's website but rather is directed to Marriott's website to complete the reservation transaction. Any business that is transacted when a guest makes a room reservation after accessing defendant's website is transacted on Marriott's website, not defendant's.

can conduct business over the internet. A guest can also interact with defendant via the "contact us" page on defendant's website. But, nothing suggests that a business transaction could be completed via the "contact us" page. The "contact us" form asks for an email address, so presumably any further interaction that would occur between the person filling out the form and defendant would be via email, not via defendant's website. A potential guest might be able to inquire about a reservation using the "contact us" page, and this inquiry might lead to a reservation, but the reservation itself would not have been made on defendant's website.

As for defendant's posting of reviews on its website, there are reviews from Arizona residents. There are also, however, many reviews from residents of other states and even reviews from international residents. By posting the reviews, defendant is sharing information, information that is not expressly aimed at Arizona residents but rather is aimed at potential guests from many forums. And, as plaintiff points out, defendant does highlight Colorado attractions on its website. But, again, defendant is simply sharing information, information that is not expressly aimed at Arizona residents.

After considering the level of interactivity and commercial nature of the exchange of information that occurs on defendant's website, the court concludes that defendant has not expressly aimed its website at Arizona residents. Because defendant has not expressly aimed its website at Arizona residents, the court lacks personal jurisdiction over defendant and

plaintiff's complaint is dismissed. Because this jurisdictional problem could not be cured by amendment, plaintiff is not given leave to amend her complaint.

## Conclusion

Defendant's motion to dismiss[14] for lack of personal jurisdiction is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint without prejudice.

DATED at Anchorage, Alaska, this 5th day of September, 2017.

/s/ H. Russel Holland
United States District Judge

---

[14]Docket No. 9.